IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>Rayan Sharaf a/k/a Feras Ghousheh<br><br>*Defendant*. | Case No. 1:23-MJ-117 |

## UNITED STATES' MOTION IN SUPPORT OF DETENTION

The United States of America respectfully moves the Court to detain the defendant pursuant to 18 U.S.C. § 3142. The defendant presents a risk of flight for which no condition or combination of conditions will appropriately ensure the defendant's appearance. The defendant operates under multiple names, has family and assets overseas, and has many passports. Moreover, the defendant regularly travels internationally and is unemployed. All this information shows the Government has met its burden of showing by a preponderance of the evidence no combination of conditions would ensure the defendant's appearance. The Government respectfully requests the defendant be detained pending trial.

## BACKGROUND

Rayan Sharaf ("Sharaf") also known as Feras Ghoush is a U.S. citizen born in Jordan. Sharaf was arrested for a wire fraud conspiracy defrauding banks out of more than $250,000. Sharaf's wire fraud conspiracy proceeded in the following manner. First Sharaf would transfer legitimate funds from a bank account to a trading account. Second, Sharaf would initiate several intermediate transactions on the trading platform. Third, Sharaf would transfer the funds to a different bank account than the one used to fund the trading platform account. Finally, Sharaf

would contact the original funding bank and claim the original deposits were unauthorized thus receiving a refund. Sharaf benefited from this scheme in excess of $250,000.

Moreover, there are additional facts bearing on Sharaf's risk of flight. First, Sharaf has sent thousands of dollars to Jordan, where Sharaf was born. Second, Sharaf routinely travels internationally. Travel records show Sharaf regularly traveled internationally since at least 2002. These records show Sharaf traveled under at least two names: (1) Rayan Sharaf and (2) Feras Ghousheh. Finally, Sharaf used multiple identifiers on bank accounts showing he is capable of evading detection. The Government's investigation discovered Sharaf's family member's information on accounts utilized as part of the scheme.

## LEGAL STANDARD

**A.**     **The Applicable Legal Standard for Detention**

The Bail Reform Act, 18 U.S.C. § 3141 et seq., sets forth the procedures for a district court to determine whether a defendant should be released or detained pending trial, sentence, or appeal.

In determining whether pretrial detention is appropriate, a court must determine whether there are conditions of release that will reasonably assure the defendant's appearance at trial and the safety of other persons and the community. 18 U.S.C. § 3142(e)(1). When risk of flight serves as the basis for detention, "the government must prove by a preponderance of the evidence that no combination of conditions will reasonably assure the defendant's presence at future court proceedings." *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001) (per curiam) (citing *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985)). In doing so, the court must consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including family ties, the person's character, ties to the community, and criminal history; and (4) the nature

and seriousness of the danger to any person or the community that would be posed by the defendant's release.  *See* 18 U.S.C. § 3142(g). In presenting such evidence, the parties are not bound by the formal rules of admissibility, *see* 18 U.S.C. 3142(f), and evidence may be presented by proffer, *see United States v. Salerno*, 481 U.S. 739, 743 (1987).

## ANALYSIS

Each of these elements will be analyzed below. Based on this analysis, the Government believes it has met its burden of showing by a preponderance of the evidence no combination of conditions would ensure the Sharaf's appearance.

A.   **The Nature and Circumstances of the Charged Offense**

The nature and circumstances of this offense demonstrate Sharaf's serious risk of flight. The charged offense, by its nature, poses a particularly strong incentive to commit voluntary flight. The Government is investigating the Sharaf for various offenses that include those carrying a mandatory imprisonment term. This penalty incentivizes the Sharaf to flee before trial.

Sharaf also took steps to evade detection by the victim banks.  Sharaf used the identifying information of individuals within his control – namely family member names and social security numbers (SSNs) -- on multiple accounts to evade detection by the victim banks and continue perpetuating the scheme. As part of this pattern, Sharaf used an approximately two-year old child's SSN on multiple accounts. Moreover, bank records and associated transaction history show family members benefiting from the fraud, thus making them potential witnesses of the crime. This makes them unsuitable third-party custodians. Plainly put, the family would be unable to prevent Sharaf from engaging in additional fraud when they have been actively benefiting from it.

Finally, as indicated above, Sharaf caused financial losses more than $250,000. The Government presently estimates Sharaf's guideline range is 41-51 months. This term of imprisonment is a strong incentive to flee to a non-extraditing jurisdiction.

**B.     The Weight of the Evidence Against the Defendant**

The weight of the evidence in this case is straightforward and strong. Voice recordings contemporaneously captured Sharaf's statements he was transferring money into one account, then different recordings stating he did not authorize those same transactions. Moreover, when questioned about who initiated the activity on these accounts, Sharaf admitted he was solely responsible for what took place on these accounts.

While this is only a partial summary of the evidence in the Government's possession, the Government believes it has a strong case against Sharaf.

**C.     The History and Characteristics of the Defendant**

    1.     <u>Criminal History</u>

Sharaf is no stranger to the criminal justice system. In early 2022, Fairfax County Police Department arrested Sharaf for domestic assault and battery of one of his family members. The assault occurred when someone tried to call the police, but Sharaf physically assaulted her, preventing her from seeking help. When officers arrived, one witness stated this was not the first time Sharaf beat her. The report also stated one of his family members witnessed the attack but was unwilling to make a statement. Finally, as part of the investigation, one witness stated Sharaf married another woman in the Ukraine. Sharaf confirmed this in an interview with agents when he said he had a relationship with someone in Poland.

Taken together, this information shows two things. First, the defendant's wife and surrounding family members would not make suitable third-party custodians. Sharaf has employed violence to control his family members. The police report stated Sharaf employed violence on occasions preceding the incident discussed above. Thus, this history of violence seriously mitigates their ability to ensure he will not continue his criminal activity. Second, the defendant maintains

other ties outside the country. Beyond the defendant's ties to Jordan, one witness stated Sharaf married a woman in Ukraine. Sharaf confirmed he has a relationship with a woman in Poland. While defense counsel stated he broke off this relationship, these ties to a country where extradition is not guaranteed bear on the defendant's intent and opportunity to flee.

      2.    <u>Character</u>

Taken together, this information shows Sharaf has the motive and means to flee. He has family and romantic ties abroad, which coupled with a potentially lengthy prison sentence, motivates him to flee. Moreover, Sharaf stored money in a non-extraditing jurisdiction and has multiple passports under various aliases, thus giving him the means to flee.

Lack of trustworthiness and a history of using false identities or false addresses supports finding a risk of flight. *See, e.g., United States v. Karmann,* 471 F. Supp. 1021, 1022 (C.D. Cal. 1979) (ordering detention on the basis that *"*the Court concludes that the defendant by reason of his conduct has made a mockery of the income tax laws and the regulations issued thereunder and has indicated he will continue to do so in defiance of the law"); *United States v. Mallory,* 268 F. Supp. 3d 854, 864 (E.D. Va. 2017) (Ellis, J.) (ordering detention after discussion of the defendant's other alias); *United States v. Umali,* No. 1:15cr301*,* 2015 WL 7455540, at *2 (E.D. Va. Nov. 23, 2015) (ordering detention by relying in part on the defendant's use of multiple aliases and concealment of identity).

The defendant was born in Jordan but later gained U.S. Citizenship. Defense counsel represented on June 7, 2023 that Sharaf was a dual citizen with U.S. and Jordanian citizenship. Jordan does not extradite citizens. Moreover, Sharaf has sent significant sums of money to Jordan. As part of our investigation, we identified wire transfers totaling at least $20,000 to Jordan with a receiving party that had a "Ghousheh" last name. Based on information and belief, this person

appears to be one of Sharaf's family members. As a result, Sharaf could flee to Jordan, avoid extradition, and live comfortably with family.

Alternatively, Sharaf could flee to his other wife in Poland. In an interview with the FBI, Sharaf admitted to having romantic ties abroad and that the relationship continued for at least three years. While defense counsel claims he broke off this relationship, it is unclear whether this break was final.

Additionally, Sharaf maintains multiple valid passports under different names. At the initial appearance, defense counsel argued that this difference centered on Sharaf's name change. However, the evidence suggests otherwise. Agents seized a number of U.S. and Jordanian passports. This seizure included two valid Jordanian passports. Both use the name "Feras Ahmad Baker Ghousheh." The Jordanian Government issued Sharaf the most recent "Feras Ghousheh" passport on February 22, 2022. However, roughly three years earlier, the U.S. State Department issued Sharaf a passport on May 9, 2019 bearing the name "Rayan Sharaf." If this were truly a name change, it occurred on or before the issuance of the U.S. Passport. However, Sharaf sought a Jordanian passport under the "Feras Ghousheh" name roughly three years later showing he intended to use the passport as an alias.

Finally, the Government has serious concerns that it has not located all passport documents associated with Sharaf.

      3.     Family and Community Ties

When a defendant does not have strong ties with a particular jurisdiction, it is reasonable to hold the defendant pending trial. *United States v. Richardson*, No. 4:17-CR-77, 2020 WL 6471201, at *3-*4 (E.D. Va. Nov. 3, 2020) (Doumar, J.). Sharaf's children and one of his wives reside in the United States. The other wife lives abroad. Sharaf's extended family live in Jordan.

Sharaf has lived in Centreville, VA since at least 2016. Even though Sharaf lives in Centreville, Virginia, he has significant ties to locations with substantial impediments to extradition. The above discussion of Sharaf's wife in Poland and family in Jordan show his ties overseas. Moreover, travel records show Sharaf regularly traveling internationally thus supporting his maintaining these ties. As a result, Sharaf's foreign ties outweigh his domestic ties in Centreville.

Moreover, information uncovered during the investigation shows Sharaf using his family members' information as part of the scheme.

Thus, the defendant's history and characteristics, including his criminal convictions, evasive activity, and family ties overseas, suggest a risk of nonappearance at further proceedings and weigh in favor of detention.

**D.     The Nature and Seriousness of the Danger to Any Person or the Community**

Danger to the community can be economic. *See, e.g.*, *United States v. Reynolds*, 956 F.2d 192, 192 (9th Cir.1992) ("danger may, at least in some cases, encompass pecuniary or economic harm"); *United States v. Parr*, 399 F. Supp. 883, 888 (W.D.Tex.1975) ("The 'danger to ... the community' [language in the Bail Reform Act] permits consideration of the defendant's propensity to commit crime generally, even where only pecuniary and not physical harm might result to the community at large."). *United States v. Provenzano*, 605 F.2d 85, 95 (3d Cir. 1979);, *United States v. Giordano*, 370 F. Supp. 2d 1256, 1270 (S.D.Fla.2005) ("no question that an economic danger, like that posed by a serial defrauder, falls under the broad umbrella of 'dangerousness' as that term is used throughout the Bail Reform Act") (citation omitted)); *United States v. Zaragoza,* 2008 WL 686825, at *3 (N.D.Cal. Mar. 11, 2008).

Those who commit a string of frauds are particularly not to be trusted. *See, e.g., United States v. Masters*, 730 F. Supp. 686, 689 (W.D.N.C. 1990) ("Defendant asserts that he does not

pose a physical danger to the community. However, the Court believes it must also consider the danger of a person who continues to participate in possibly fraudulent schemes … the Court believes Defendant is an unrepentent con-artist who will continue to prey on any person gullible enough to listen to his sales talk") (*citing United States v. Malquist*, 619 F. Supp. 875, 878 (D. Mont. 1985).

Sharaf is the type of serial defrauder courts worry about. Virginia Employment Records show Sharaf does not hold a steady job and has not been employed since 2018. Despite this unemployment, other information shows Sharaf lives a lavish lifestyle. During the search warrant execution, agents seized two Rolex watches and a Tag Huer watch. Moreover, bank records show spending on things such as: (1) an American Express Platinum Card; (2) international trips; and (3) jewelry purchases. If released, Sharaf as a practical matter must continue committing fraud to support his lifestyle.

## **CONCLUSION**

An individualized review of the § 3142(g) factors strongly favor detention. Sharaf's ties overseas evince a motivation to flee U.S. prosecution. The defendant's financial resources coupled with his extensive number of passports provides him the means to flee abroad if released. Thus, the § 3142(g) factors favor pretrial detention. The Government has met its burden to show by a preponderance of the evidence that Sharaf is a flight risk and that no condition or combination of conditions that would reasonably ensure his appearance in court if he were to be released. The United States respectfully requests that the Court detain the defendant pending trial.

Respectfully submitted,

Jessica D. Aber
United States Attorney

By: _/s/ Evan Mulbry_
Evan Mulbry
Special Assistant United States Attorney
Jonathan Keim
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Ave.
Alexandria, Virginia 22314
Phone: 703-299-3769
Email: Evan.mulbry@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on June 9, 2023, I electronically filed the foregoing response with the Clerk of Court using the CM/ECF system, which will serve all counsel of record.

By: /s/ Evan Mulbry
Evan Mulbry
Special Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
Office:  (703) 299-3809
Fax:    (703) 299-3980
Email:  Evan.Mulbry@usdoj.gov